SCHOTT, Judge.
Defendant has appealed from a judgment in favor of plaintiff in the amount of $2550 for the rent of premises on Odeon Street in the Algiers section of New Orleans. Since May 1, 1960, defendant had leased from plaintiff the subject premises for use as a branch bank. Initially the rent was $350 per month, and after a number of extensions with corresponding in *485 creases the rent for the final year of the lease between June 1, 1972, and May 31, 1973, was $550. As the end of the lease approached both parties were aware that defendant was constructing a new branch bank at another location but they both anticipated that the new facility would not be completed before the expiration of the lease so that negotiations were conducted for an extension of the lease on a month to month basis beginning June 1. In response to a letter from plaintiff’s realtor dated May 1, 1973, in which it was proposed that the rent for the premises would be $850 per month starting June 1 and for each additional month of occupancy by defendant, defendant replied on May 7 that it was willing to rent the premises for the month of June only at a rental of $850 in advance, which sum was sent by defendant and accepted by plaintiff.
On June 10 defendant ceased operations at plaintiff’s premises and on July 11 defendant notified plaintiff that his premises had been vacated as of July 10. Shortly after his receipt of this letter plaintiff visited the premises and found that they had been left in a state of disrepair and he immediately took steps to insure that defendant would restore the premises to the condition they were in when the original lease term commenced. After procuring an estimate of $5355 for the work to be done, he passed this on to his attorney, Charles A. Levy, Jr., to transmit to defendant.
On July 13, 1973, Levy by letter to defendant informed it that notwithstanding defendant’s statement that the building had been vacated on July 11 some of the defendant’s equipment still remained in the premises, he submitted to defendant an itemized list of work which defendant was expected to do in the building, and he said the following:
“Demand is also made for rent for July at the rate of $150.00 per month and however long after it takes for the bank to clear the list of repairs to put the building in like condition in which it was received when it was leased to the bank originally on May 31, 1960.
“The rent for the month of July is past due and I would appreciate receiving a check to cover same immediately. Obviously, you must realize that until the repairs are made, the bank still has possession of the premises. If the bank wishes to have Mr. Chifici arrange for the repairs, and estimate the amount of time required to have same done, I will be pleazed to work out a settlement with your authorized representative.”
Levy testified that after dictating the letter to his secretary and after she typed the same she presented it to him for his signature, whereupon he noted that the secretary had made an error in the letter in that the monthly rental should have read $850 rather than $150. On the carbon copy of the letter he changed the figure and instructed the secretary to change the original before the same was mailed to defendant. He signed the letter, but, unfortunately, the secretary failed to make the change.
On July 27 plaintiff, his realtor and two representatives of defendant met at the premises to discuss the work to be done, and although plaintiff stated that it was then agreed by defendant’s representatives that the rent would remain the same as it was in June without any specific reference to the dollar amount, none of the other three parties at this meeting recalled any such conversation. One of the defendant’s representatives testified that he had a copy of Levy’s letter with him at the time and had offered to show it to the realtor in connection with the repairs, but the realtor testified that he had not looked at the letter. The realtor testified that he was always under the impression that the rent would be $850 although no one said anything about it.
Defendant went ahead with its work, and having completed same on September 11 sent a letter to plaintiff requesting a release in connection with the restoration of *486 the premises which was signed by plaintiff and by him transmitted to Levy with instructions to collect the rent. At that point, Levy contacted defendant and called for the rent which was sent to him in the amount of $450. According' to Levy, this was the first knowledge that he had of the error in his letter and immediately returned the bank’s check with a demand for $2550. According to the defendant’s representative, the matter was then turned over to defendant’s attorneys which led up to this lawsuit.
The trial judge held that the parties never had a full meeting of the minds as to the amount of the rent for July, August and September. He noted defendant’s argument that it had been willing to pay $850 for the month of June because it was still operating its branch at that time but that once it ceased banking operations it did not countenance the payment of such high rent. Noting that it did not notify plaintiff of its vacating the premises until July 10 the trial court had “little difficulty under such circumstances in fixing the rate of rent for July at the rate that was agreed upon for June.”
The trial court found that the delay in the surrender of the premises was the fault of defendant and that plaintiff was “entitled to the rent his property could bring and was denied the opportunity to rent it to someone else.” The trial judge said further:
“Having agreed to $850. per month in May, having paid $850. per month in June; having been allowed to stay for the month of June and then failing to attempt to return the premises to its owner until July, the rent for July was fixed by the parties at $850.00. If the property in June and July, 1973 brought the rent of $850. per month per agreement, then it is not at all unreasonable to conclude that the rent for the same premises for the two subsequent months of August and September was no different than it was for June and July.
“The bank was not justified in hanging its hat on the erroneous letter stating $150.00 and should have, in good conscience, discussed this matter, if not with Attorney Levy, then at least with realtor Toluto with whom they had discussed the previous rents over the years.”
In this Court defendant contends that plaintiff is bound by his attorney’s commitment that the rent for the three months would be $150 for each. Defendant’s position is that it was under no obligation to make all of the repairs which plaintiff originally demanded be made or even those repairs it eventually agreed to make. It maintains that its acquiescence in making the repairs was based in part on the amount of $150 per month which Levy had committed to it. On the other hand, plaintiff contends that defendant knew or should have known that this was an obvious error in Levy’s letter; that it had kept quiet about the figure in Levy’s letter from the time it received the letter until the restoration of the premises was completed and it then tried to take advantage of plaintiff, who at all times expected defendant to be paying $850 per month. Both sides have addressed themselves to the problem as one of rent and have concerned themselves with what was the reasonable amount of rent to be paid under the circumstances.
We do not see a relationship between plaintiff and defendant between July 1 and September 30, 1973, as one of lease. The lease between these parties had expired on May 31, 1973, and a special one-month lease was entered into between these parties for the month of June at $850 rent. LSA-C.C. Art. 2669 defines lease as a contract by which one party gives to the other the enjoyment of a thing at a fixed price predicated on consent alone between the parties. The evidence does not show that this was the situation during the three months in question.
-On July 1 the defendant was no longer using the leased premises for the *487 purpose originally intended. It did carry over from its previous lease of one month the obligation to remove its equipment and fixtures from the premises, which it did as of July 10. The situation between the parties for the month of July was therefore controlled by LSA-C.C. Art. 2689. Since defendant did continue in possession of the premises and since there was no opposition by plaintiff the result was that the June lease was presumed to have been continued for the month of July with the corresponding obligation on the part of defendant to pay the sum of $850 rent for that month, i. e., the June lease was reconducted.
However, the situation is quite different for the months of August and September. When the defendant notified plaintiff that it had vacated the premises and plaintiff examined the premises there arose a confrontation between these parties as to defendant’s obligation to restore plaintiffs premises to their original condition. The original lease though not placed in evidence is before us on a joint stipulation of the parties. It provides as follows:
“2. Lessee shall have the absolute right to make any alterations, additions or repairs to the leased premises including, by way of example and not by way of limitation, the installation of a fire and burglar proof vault and heating and air conditioning equipment; provided that lessee, at the termination of this lease, shall have the right to remove all such additions and alterations made to the leased premises and all equipment placed therein, regardless of whether such equipment, alterations or repairs have become immovable by destination. The lessee shall be obliged to return the leased premises at the termination of this lease or at any renewal thereof in like condition as when received by lessee.
“3. Lessee shall have the right to erect and install an electric advertising sign or signs on the outside of the building, which said sign or signs may be removed at the termination of this lease or any renewal thereof.”
We know from the record that these parties were not in agreement as to what was required of defendant under these lease provisions. We also know that defendant agreed to make certain repairs when the parties met on July 27 and that these repairs were completed on September 11. It is clear that defendant was at least in part motivated to agree to such repairs by the amount of the rent stated by Levy to be $150. In any event, it was not occupying the premises from July 11 until September 11 in the capacity of a tenant under a lease, so that the trial judge erred in fixing “rent” for these two months at $850 per month.
The question is whether plaintiff is entitled to any amount beyond the $850 for July. Here we have a situation where a lease has expired and the lessee has vacated the premises. While the lease provisions confer on the lessee the right to remove additions, they do not oblige the lessee to do so. Furthermore, there may be some ambiguity between the provisions conferring upon the lessee the right to remove and those which require lessee “to return the leased premises. in like condition as when received .” Nonetheless, the lessee has complied with the demand of the lessor to remove certain improvements from and to make various repairs in the premises.
Some of the work undertaken by defendant may have been required by the lease such as repair of the front door, and replacement of broken and damaged ceiling tiles and of the vinyl flooring. But most of the items undertaken by defendant, such as the removal of its sign, the exterior panels, the night depository, light fixtures, interior wood paneling, sheetrock, booths, and™ railings were within the purview of the lease provisions which bestow on the lessee the right to remove improvements and if exercised the corresponding obligation to repair *488 where such improvements are removed. Thus, it seems that defendant could have simply refused to remove some of the things it removed and abandoned them had this been less onerous. Yet we have the anomalous situation where the plaintiff lessor has demanded that the defendant lessee remove all improvements, the latter has acquiesced and restored the premises at its expense and the plaintiff would now charge defendant for the time it took to mollify the plaintiff. We are cited and have found no authority whatsoever for plaintiff’s position. On the contrary, we find the case of Dietz v. Superior Oil Company, 252 So.2d 198 (La.App. 3rd Cir. 1971) which supports the opposite view:
“The plaintiffs-appellees have asked that this court set a rental fee and declare such a fee due and owing to the lessor, from the date upon which the lease terminated until such time as the improvements have been removed. No evidence was introduced into the record indicating what rent might be due to the lessor for continued use of this tract. Additionally, plaintiffs-appellees failed to show how or in what manner the lessee is continuing to use the property so as to be liable for such rental fees. We think that plaintiffs-appellees are not entitled to that relief, as they have failed to show or prove this item as an element of damages.”
We have concluded that the only rational result is to disallow plaintiff recovery of “rent” or “damages” for the months of August and September. Their lease was at an end. The purpose for which the lease was entered into and the improvements were installed in the beginning and for the duration of the lessor-lessee relationship no longer existed when the branch bank was closed in June. In the absence of a lease provision, what reason exists to require the lessee to compensate the lessor for the reasonable time required for lessee to remove its improvements and restore the premises to their original unimproved condition? We are unable to find any logical basis for making an award to plaintiff under the circumstances.
Accordingly, the judgment appealed from is amended and there is judgment in favor of plaintiff, Frank Chifici, against defendant, Bank of New Orleans, in the sum of $850 with legal interest from date of demand until paid and for all costs of these proceedings except the costs of this appeal which are to be divided equally between the parties.
Amended.